Good morning, Your Honors. Good morning, Chief Judge. May it please the Court. My name is Michael Rosado. I'm representing the petitioner, Ms. Rosa Cabrera Vasquez. Your Honors, this case initiated in the Baltimore Immigration Court. Ms. Cabrera requested asylum, withholding, and protection under the Convention Against Torture. Can you pull the microphone up a little? I'm having some trouble. She's only appealing the denial of the application under the Convention Against Torture. Your Honors, the elephant in the room at this point is, if we accept the evidence or the findings of fact of the immigration judge, we cannot sustain our burden. Substantial evidence. However, the underlying problem in this case is that the immigration judge, in his findings of fact, ignored crucial evidence in his analysis. And thus, in the initial question of whether Ms. Cabrera would more than likely be tortured, he failed to address substantial issues that should have been addressed. Namely, Ms. Cabrera testified that she was threatened twice. In his findings of fact, the immigration judge states that the threats to her were vague and fails to in any way grapple with whether the threats of death were, in fact, constituting torture. Now, in the test, this, these facts are supported in the testimony. Particularly given the fact that a number of her family members had, in fact, were, in fact, murdered, right? Or disappeared. The facts of the, with respect to the disappearance, her sister-in-law disappeared for approximately a period of time. The crux of Ms. Cabrera's claim for relief under the Convention Against Torture is the fact that she was threatened with death initially as a result of her seeking out her sister-in-law, fled, and subsequent to her fleeing her hometown to another town within El Salvador, she was once again threatened with death. Now, in the immigration judge's the police, they laughed in her face, and they laughed in her face because she didn't have enough proof. However, a reading of her testimony very clearly shows on page 100 of the administrative record, she describes the first instance of being threatened, her first approach to the police, where she was told, you don't have enough proof. That, if those were the only facts, then the immigration judge's finding could possibly sustain. However, the additional fact that she was threatened a second time, she attempted to provide the police with evidence, and at that point, they laughed in her face, and they gave her a subsequent reason at that point. Well, maybe it's just that you're, your children, her sons, her teenage gang members, and they refused to help her. So differentiate at that point the issue of acquiescence of the public officials. It seems to me the I.J. here used a standard and simply said she had to prove willful acceptance and consciously approval of the tortious action by the public officials, as opposed to what appears as though our precedent actually only requires that they were aware of the tortious action and that they breached their duty to intervene. That seemed to be pivotal, because if you accept the former, it's a much more difficult burden to me than the latter. So which one are we laboring under here, in terms of evaluating how the I.J. looked at whether these public officials were acquiescing? That is correct, Your Honor. Under the Fourth Circuit... What is correct? The willful blindness standard. Is the correct one? Is the correct standard under Suarez-Valenswell. So it is correct to say that your client had to demonstrate that the public officials willfully accepted and consciously approved of the tortious conduct? No, Your Honor. And that is part of the crux of the legal error committed by the immigration judge in this case. Now, as in Suarez-Valenswell... So what is the correct standard? The correct standard under Suarez-Valenswell is willful blindness, under which a public official need only be aware of the possibility of. Now, as in Suarez-Valenswell... Where does that come from? The Fourth Circuit, Your Honor. What case? I'm sorry? What case did it come from? This... Where did that standard come from in our case? I want to know, because I want to ask the other side about that case. I think that's critical. What case did we say that it's an awareness and just a breach of duty that's necessary? Your Honor, if I remember correctly, I don't have it in my notes, but I believe it's a Ninth Circuit case. But I do not have it in front of me at this point. Oh, okay. I thought you said it was a Fourth Circuit case. Suarez-Valenswell is a Fourth Circuit case. I believe the judge was asking where we got the... Where the Fourth Circuit, what precedent... No, no. Not where the Fourth Circuit... Where in the Fourth Circuit was it ruled in? Not where did the Fourth Circuit get it from? Well, the Circuit didn't need to get it from anywhere, unless it comes from the Supreme Court or statute. Your Honor, the Suarez-Valenswell case was out of Virginia, out of the Arlington Immigration Court. If that was your question, I'm sorry. I misunderstood the question. I want to make sure we were talking about the same case. Oh, okay. I'm sorry, Your Honor. Now, Your Honor, it would not matter whether the judge used willful blindness or willful acceptance if there wasn't any torture. Same issue was with President Valenswell... Suarez-Valenswell. However, in this case, the question of whether there was any torture was not addressed at all. The immigration judge simply concludes the respondent has not presented any evidence... So even if there is acquiescence by the public officials, there still must be torture? There must be torture. And we acknowledge that. Now, the problem here is that the inquiry into whether there was any torture, whether the threat of death to both Ms. Cabrera and her son, whether that constitutes torture, was simply short-circuited. The immigration judge simply states there isn't any evidence of torture. That's a quote from his decision. He does not grapple with some of the complexities of that question. In fact, as... I think persecution would be synonymous. And we've clearly said threat of death does constitute persecution. That is correct. And under the regulation, we are under the regulation at this point, 8 CFR 208-18, threat of imminent death not only to yourself but to someone else, in this case, Ms. Cabrera's son, would constitute that. Now, we do understand that that is a factual inquiry that has to be made. The problem in this case, it wasn't made. There just isn't any consideration of the factors necessary. A very similar case actually pointed out in government's brief is the Seventh Circuit Perez v. Sessions case. In that case, while the court did say we need not treat every threat of death as torture, the court did remand for a consideration of some of the factors that need to be considered in the quantum of the threat of death. So, for example, was there an actual attempt made on the life of the petitioner? Was there any credibility to the threat of death? Was there any possibility that it could happen? The Perez-Sessions court in the Seventh Circuit actually discusses whether or not there were these findings made by the BIA. Now, in this case, the BIA simply affirmed the immigration judge. There isn't any discussion. The BIA also does not in any way grapple with the fully briefed issue of whether or not there were erroneous factual findings at the immigration judge level. So in these circles, we can look at the IJ and analysis, right? That is correct, Your Honor. But for purposes of appeal, the problem that we have at this point is that there is a lack of analysis to actually review. For example, if the immigration judge said that threats of death did not amount to torture, it would be a completely different discussion. We would actually be discussing the merits, whether what actually would constitute torture or not. In this case, we didn't even reach that point. The immigration judge didn't reach that point. And for some reason, the BIA refused to address the issue, despite it being fully briefed on appeal. Now, the issues with respect to the CAC claim were fully briefed to the BIA. And these issues were spelled out to them. The issue of the fact that the immigration judge did not in any way discuss or even find things of fact that there were threats of death to both her and her son. And this is, in fact, a crucial fact with respect to the analysis of whether it's more likely than not that she would be tortured in the future, because the future likelihood is not that she will receive additional death threats. The future likely, the question becomes, is she likely to be killed? Is her son likely to be killed? That's what the immigration judge ultimately should have been grappling with. Now, in our brief, we fully set out our position that it was clearly erroneous and the immigration judge should be reversed. But, in fact, this case is most likely ripe for a remand to consider these issues, especially in light of the fact that if her son was 17 years of age, that bears on the question. Who got murdered? The nephew got murdered. The nephew was murdered several years prior. So that is an actual consideration that the immigration judge or even the Board of Appeals should have grappled with. Now, Your Honor, with respect to the issue of the country conditions, what essentially has been done in this case is both the immigration judge and the Board of Appeals have basically used the country conditions as a necessary and sufficient condition to deny the case without taking into account the actual experiences of the petitioner, of Ms. Cabrera. So the immigration judge picks and chooses several positive factors in the evidence. The government has been attempting to fight gangs. The government has been pouring some money into the security services and says, well, that outweighs the negative corruption issues. That outweighs whatever ineffectiveness the police might have. That outweighs all the other negative factors in the evidence, and then they fail to contextualize it within the actual facts of what Ms. Cabrera experienced. Ms. Cabrera's experience would tend to corroborate the more negative aspects of the country conditions that were submitted into evidence, not the positive ones. And by doing so, we believe it is an abuse of discretion. You cannot take a case, the actual facts of the case, which we are arguing have been ignored, and then fail to contextualize the country conditions and pick and choose the ones that you want at this point. Now, Your Honor, if there are no further questions, we would rest. Is emotional torture sufficient, or does she have to show that she was threatened to be killed? It's substantial. The regulations define it as substantial mental anguish, prolonged substantial mental anguish. And that is a question of fact for the immigration judge to determine it. They must determine, was this enough? It would be our argument that possibly to her own person, the immigration judge could have made a finding that possibly not, maybe not, but the fact that she also had a son, she was threatened twice, the second time after fleeing, there could be a factual finding if it was allowed, if the analysis was done. Thank you, Mr. Rosado. Thank you, Your Honor. Mr. Lutz. Good morning, Your Honors. May it please the Court, Alexander Lutz for the Respondent. Your Honors, before the agency, Ms. Cabrera's burden was to show a clear probability that in the future she would not just be tortured, but would be tortured with the acquiescence of a Salvadoran public official. And before this Court, the question is whether this record would compel a finding contrary to that reached by the agency. At the beginning of opposing counsel's presentation, he conceded that based on the findings that the immigration judge actually rendered, he's not going to be able to meet that substantial evidence burden. And therefore, he identifies what he claims to be errors by the immigration judge in failing to consider certain facts or in failing to apply willful blindness versus willful acceptance standards. So if it pleases the Court, I'm just going to jump right into those points. Your Honors, we see in the immigration judge's opinion that the immigration judge actually noted a number of the facts, well, I think all the facts that opposing counsel just addressed. At page — let's see if I can pull it up here. The immigration judge identified the threats that Ms. Cabrera faced. That's at pages 52 to 53.  The immigration judge goes through that whole page and on to the next page, 54, with factual analysis. And then at pages 61 and 62 puts it all back together and identifies the Respondent     page at 53. So the I.A.J. did identify them, but what he didn't appear to do was to analyze them. Well, Your Honors — There doesn't seem to be an analytical analysis of the merits of her claim, simply saying, well, this happened, this happened, this happened. That's not sufficient.      That's not an analysis. That's not an analysis. That's not an analysis. I mean, you've got to at least say why. I mean, look at what she is saying here. And then make a determination, why is that not sufficient? Well, Your Honor, respectfully — None of that's in the record. You're correct in terms of what he has enumerated as a list of things. But there is no analysis there by the I.A.J. as to why it is so that this is not sufficient. Well, Your Honor, I'm just going to turn back to the standard of law here, because what the immigration judge's decision does is it lays out the facts, it lays out the law, and then it applies the law to the facts. And so certainly the immigration judge could have said — That part about it is the laid, applied law to the facts. You mean just simply went to a conclusion. Skipped a step in between in applying the law to the facts, which means analysis. That's what I'm saying is missing here, is the analysis of it. You certainly got it being laid out as to what the facts are, then you've got a conclusion. But you don't have an analysis connecting why. Well, Your Honor, I would respectfully disagree, because I think the conclusion that the immigration judge reached flows naturally from the facts and the law. The immigration judge — So why wasn't it sufficient? Where did the judge say why those facts weren't sufficient to meet her burden here? Well, Your Honor, at page 57 to 58, this is where the immigration judge — I mean, I know it's unfortunate, he says. Is that all you have to say, unfortunate but not sufficient? No, Your Honor. I think the immigration judge's decision requires putting together the facts, the law, and that application. So I — definitely the immigration judge isn't just backhanding this by saying it's unfortunate. What did he say to show the analysis here? Torture is defined in part as the infliction of severe pain or suffering by a public official or at the instigation of a public official or with the consent or acquiescence of a public official. That's the law. That's the law. Correct, Your Honor. The board has specified that only extreme forms of cruel and inhuman treatment rise to the level of torture, citing matter of J.E. And then at page 61, the immigration judge cites that same opinion again, matter of J.E., and says the threats and harassment that respondents suffered, while unfortunate, do not rise to the level of torture for purposes of protection under the cap. That doesn't tell us why. Because it's — Because it's on his face, saying it's unfortunate. But it doesn't rise as a conclusion. It does not tell you why he is ruling like that. Well, Your Honor, first of all, I guess I'd make two points in response to your question. Number one, the immigration judge doesn't have to set forth an exegesis. It doesn't have to dive deeply into each claim that the applicant makes. They just have to set forth a basis for the decision that's sufficient for us to understand that they thought and heard and didn't merely react. We're looking for a basis in the decision that can be reviewed on appeal. Does I.J. find her credible? Yes, Your Honor, I believe so. But credible testimony does not necessarily meet the burden of proof for cap protection. So what we have here, Your Honor, is just threats. Threats can rise to the level of torture. Your Honor, respectfully, I — Just generally. I mean, the general proposition is threats can rise to the level of torture, whether it's in this case or another question. But that can happen, right? That is possible, yes. But under the facts of this case, the record does not compel that conclusion. Torture is more severe than persecution. And while this Court has held that threats of death — But if threats inflict emotional or physical harm, then it can rise to the level of torture, particularly when you're talking about potentially killing someone. Your Honor, I'm not aware of a case from this circuit that says that the threats of the type present in this record rise to the level of torture. No court case is going to say this record, because this is the only case we've got, meaning threats of this type, which you would have to turn to the CFR. Well, Your Honor, what I mean by that is threats in the context of the other facts that are present in this case. I'm trying to contextualize these threats. I agree. I'm not — Okay. But you started out, I'm not aware of a case of threats in this case. You're not going to be aware of another in this case, or this is this case. All right. Thank you, Your Honor. I appreciate that clarification. You're right. I'm not aware of a case that says that threats alone are torture. I think it is possible that — So the person has to actually be tortured or beaten in some way. It can't be that her sister-in-law disappeared, that her nephew had been murdered, and now they're saying we're going to do the same to you. Your Honor, that's — We've got to actually cut an arm off or something, and then it'll count. Oh, goodness, no, Your Honor, no. But you would need something else besides the type of threat that we see in this case. What? Well, as an example, and this is just a hypothetical, but some evidence indicating that the threat is actually going to be carried out. Definitely her nephew, wasn't it? Well, Your Honor, that happened years before while Ms. Cabrera was in the United States, and it was completely unrelated to the facts that formed the basis for CAD application. So respectfully, we'd suggest that that's not the type of conduct that we'd be looking for here. If the gang had — well, you know, Your Honors, for example, the Zelaya case provides the type of facts that might suggest that threats include torture because in that case, the applicant was threatened with death, but the attacker actually fired a gun at him and said, you're lucky I only have one bullet. So I'm not saying we need something — Okay, so someone needs to shoot at her. Your Honor, I'm saying we need something suggesting that these threats are actually going to be carried out. It's entirely reasonable on the facts of this case to reach the conclusion that the gang threatened Ms. Cabrera because they didn't want her to come back on their territory. They didn't want her to look to tell anybody about this hidden grave. And none of that is what — the court didn't say any of what you're saying. The court could just explain its reasoning. Well, Your Honors, even if the court were to find that the record compels the — that these threats constituted torture, that still isn't sufficient because Catt is forward-looking. Unlike asylum and withholding of removal, an incident in the past can't create a presumption and shift the burden onto the government. The question for Catt is always, is it more than 50 percent likely in the future that the applicant is going to be tortured with the consent or acquiescence of a public official? And in this case, even if the court were to find that the record compels a conclusion that the threats she experienced in the past constituted torture, she still hasn't shown that the record compels the conclusion that a public official will acquiesce in the future. That's what the board focused on in its citation to the immigration judges. They already acquiesced in the future because it happened twice. The first time, okay, and then they ignored her, told her she needed more evidence, I don't know what, a written note from the gang that they're threatening her. And then she went back and they laughed at her and told her, her family members must be in the gang. So they did already acquiesce in the future. Well, a couple of points. That second time. Excuse me, Your Honor, I'm sorry to interrupt. A couple of points. First, she did actually have a written note. She says that she received a written threat, and it's not clear that she brought that to the police or why she wouldn't have done that. But the police definitely did say, and I'm quoting her testimony now, the police I talked to told me that if I didn't have any type of proof that I had been persecuted by them, that I had to bring them some kind of proof they couldn't act just like that. Another point I would make, Your Honor, is that the record isn't clear. It doesn't compel the conclusion that she went to the police on two occasions. The immigration judge doesn't make any finding on that point. He just talks about everything she said the police told her. And he found her credible. That's right, Your Honor. So that happened. So the question is whether that credible testimony meets her burden of proof in light of all the evidence in the record. The regulation requires the immigration judge to look at the totality of the circumstances. Ms. Cabrera testified at pages 100 and 104 about her experiences with the police. But the questions she was asked and the answers she gave don't make it clear that it was two separate occasions because the first time she talks about it, she said she went to the police while she was in anguish, which suggests she meant during the three weeks in March of 2014 that her sister-in-law had disappeared. And then in the second instance of her testimony on page 104, she's asked, did you go to the police? And she says yes. And they say, well, when did that occur? And she says it was in March, I believe, March 4th. So it doesn't indicate that those are two separate incidents when they occurred so clearly in time. I'm not saying that the record clearly shows it was just one. I'm saying the record's not clear. And it doesn't compel reversal of the immigration judge's findings just on this basis. Your Honor, the immigration judge had to take this testimony, that the police said they couldn't act without proof, that they laughed in her face, and that they said, he asked me if I had sons and said maybe my children were gang members when they are not, to go back home, that was it. That's all the testimony we get from her. That doesn't show a past act of acquiescence. And it doesn't compel a finding of future acquiescence, especially in light of the evidence in the record, because the totality of this evidence contains these two pages of testimony. And then it contains voluminous evidence, not just that the Salvadoran government is trying to stop the gangs or has a policy. We're not arguing here that an abstract policy trumps experience. We're talking about a government that is actually tangibly trying to curb gang violence. And so if the question is, does this record compel a conclusion that in the future is more than 50 percent likely that a government official will acquiesce to her torture, we've got to look at what the government is telling the police to do. This is the government that replaced MONODURA, the heavy hand policy, in 2003 with the super MONODURA policy in 2004. They implemented a truce that substantially dropped deaths due to gang violence. And most recently, we see that in 2010, the government, and I'm quoting now from the record, announced a new security plan called El Salvador Seguro, which is not just a plan where the police. In this case, the government official laughed in her face. What are we to do with that? Well, Your Honor, as the immigration judge said, that's certainly troubling. But that's not a backhanded comment. That's an attempt to weigh her personal experiences against the totality of the evidence. Your Honor, I'd point out that the record — excuse me, the regulation defining acquiescence says that it requires a public official, prior to the activity constituting torture, to have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity. So mere awareness and a breach of that responsibility. And when she goes to them, they laugh in her face. You mentioned the Salvadorian government's policies, certainly a factor. But as Judge Thacker pointed out, it need only be a public official because who else does she go to than the local police? She doesn't go to the prime minister or the president of the country or even to the governing body for it. She goes to the local police and they laugh in her face. What did they laugh about when she brought it? Now, was this the instance she went where she found this grave and the gang members, by her testimony, threatened her? That's right, Your Honor. So she finds a grave. She says they threatened them. Already has the evidence. Was the nephew already killed at that time? Yes, Your Honor, but years in the past for a different reason. The nephew had been killed for not turning his bicycle over to him. That's right. Had the sister been kidnapped and raped? Yes, Your Honor. And so in the face of this, she goes to the police and she says, I guess found a grave. And they say, why wouldn't you go look to see if there's a grave? I'm sorry, you're asking me or you saying? The police. I mean, why is that? Why would you laugh if someone tells you I found a grave and I've been threatened by this gang for telling you this because this grave is probably somebody they put there. But they laugh and do nothing. Well, Your Honor, I understand that point. And I'm certainly not trying to downplay Ms. Cabrera's experience. But in order to find that that action constituted acquiescence, we'd need to find that the police had awareness of activity constituting torture. Awareness being credible testimony of this lady, credible statement which the judge found it was credible, what she said and a failure or a breach of a duty to do something, the response being simply to laugh in her face. Well, Your Honor, let me focus on the second half of that clause, awareness of activity constituting torture. Ms. Cabrera goes and speaks to the police and all she can say to them, she can talk about what happened to her nephew years ago for a different reason. She can talk about the disappearance of her sister-in-law. Didn't she get a direct threat from this gang of five? She did, Your Honor. They threatened to kill both she and her son. That's right, Your Honor. More than once. And that's not torture? No, Your Honor. A mother is told they're going to kill her son? Your Honor, on this record, that threat alone, this is a Seventh Circuit case. They killed the nephew for not giving up his bicycle. She found a clandestine grave. Your Honor, I understand. It's worse than the bike. But the question is, when the police heard that she had been threatened, there had been no action to carry out those threats with respect to her. She's never been harmed. Brandon's never been harmed. Okay, so you do have to shoot at her. I'm not saying they have to shoot at her. I'm just saying that the record doesn't compel the conclusion. What do you mean, carry out the threats, then? No evidence to carry out the threats. Like what? She's not been killed. Right. Excuse me, Your Honor. She's not been killed. Or raped. I'm not suggesting that you can only get cat protection if someone shoots at you or if someone's been raped. I'm just saying that in this case, you have a threat. No, you wouldn't be in this position if the court below had just explained itself. Your Honor, certainly the immigration judge could have said more, but I respectfully would suggest that this isn't the type of immigration judge decision on which remand is appropriate. Because the immigration judge recited the facts, correctly recited the law, and supports. And the board adopted that, but the court can look past the board's decision to see what the immigration judge found to see the basis of the board's holding. But do you see the pattern this would say for cases like this? It would be essentially the immigration judge could meet that by simply saying, every one of these things happened. That's unfortunate. That's not enough. End of case. That's not the way it goes. He's got to give us some reason as to why that's not sufficient. You have this CFR regulation here, which clearly says that it is legally sufficient for mental torture to be a basis in this type of a case. That's the statute that says that. Case law interprets it that way, too. All they need is an awareness, mere awareness, not willful acceptance. It seems as though there's some indication that I.J. is implying, but an awareness and a breach of that. Duty to do something. Well, Your Honor, again, even if the court were to find that the record compels the conclusion that that past incident was torture with acquiescence, again, the question is whether the record compels the conclusion that that's going to happen in the future. And since Ms. Cabrera has left El Salvador, the government has continued to try new things, a $2 billion security plan. The immigration judge is entitled to weigh her own testimony against the evidence of record and make an assessment as to whether or not she's shown a better-than-50 percent chance of future torture with acquiescence. And Ms. Cabrera can't meet her burden today to show that the record compels that conclusion, that no reasonable fact-finder could fail to find that record. Past torture is relevant to future torture. But not dispositive. But here the I.J. says there's no evidence. Your Honor, the Respondent did not present evidence that she was tortured in the past or tortured in the future. The threats and harassment she suffered do not rise to the level of torture for purposes of protection under the CAT. So he's saying that these past incidents aren't sufficient to rise to the level of torture. And what I'm saying today is, even if the court disagrees with that under the highly deferential substantial evidence standard, it's still not dispositive because that alone doesn't meet a burden of proof before the agency, let alone before the government. And, Your Honors, I have one minute left, and I want to just turn very briefly to the willful acceptance versus willful blindness issue, because I know that drew some of the Court's attention during opposing counsel's presentation. The case where this Court first addressed that was Lopez-Soto, but that case got settled while it was pending on bond review, so it's no longer a good precedent. So the first published presidential case where the Court addressed it was Suarez-Valenzuela. And in that case, the Court said that willful blindness and willful acceptance are both ways of acquiescing to torture. That's consistent with the Senate's understanding of the CAT. That's consistent with the Ninth Circuit opinion in Zhang that the Fourth Circuit cited in Suarez-Valenzuela. So the question is, did the immigration judge apply a standard that excludes the possibility of acceptance through willful blindness? And he didn't here, because he cited the willful blindness standard, and he nowhere required Ms. Cabrera to show only willful acceptance. That's how the Court evaluated the immigration judge's opinion in Suarez-Valenzuela, and that's how it should evaluate it here. I see I'm over time, Your Honor, so we respectfully request that the Court deny the petition for review. Thank you. Mr. Rosado, on this same record and evidence, there's a basis for a denial of your withhold of removal and denial of asylum claim, correct? That is correct, Your Honor. But you didn't appeal those two? No, Your Honor. Okay, so you went for the highest standard, because normally it's sort of almost like boilerplate language in a lot of these cases. If you couldn't meet the asylum withhold of removal, then clearly you can't reach CAT claim. You're familiar with that language in a lot of cases. Well, how do you think it's going to be enough to reach the CAT claim, and you didn't bring the rest? It seemed to me this would be perfect with persecution and that kind of thing, but counsel says that it has to be, CAT is something more than. So don't you concede something when you don't bring that to us and say that the less than standard you don't appeal to us, but then you appeal the more than, under the same facts and evidence. How is that? Your Honor, respectfully, the asylum and withholding, or asylum under 208 of the INA, asylum under 241, require a certain type of proof as to the motivation of the individuals making the threats or persecuting the individual. Now, the BIA... Family, you got it here. It was her, it's a consanguinity. That's the motivation. She's tied, we've shown that. We've established that in asylum withholding and removal. That is correct, Your Honor. However, when you read the BIA decision, the BIA focuses almost exclusively, I believe almost 90% of his opinion in addressing the denial of the 208 and 241 claim and ignores the very important relief under the CAT. And that sort of ignorance, ignoring the third type of relief, which is CAT, is flagrant. We saw this point. And in determining the strategy of appeal, we wanted to hone in on the fact that this third type of relief, which is independent, it is more likely than not standard, but does not require the issue of motivation, the analysis of did the immigration just properly consider in his fact-finding those issues. But the problem is, though, is if you can prove a CAT claim, you almost necessarily can prove a withholding or removal. Your Honor, respectfully, we do not believe that is the case because of the motivation. Really? You don't think so? If you can prove that evidence to show torture, past torture, you don't have enough to show the standard for persecution? Because of the motivation question, Your Honor. Withholding in an asylum necessarily requires there to prove the motive, the nexus between the action taken against the individual. So there are situations, for example, where a persecutor would harm or torture an individual and be found eligible under the Convention Against Torture, but not under 208 or 241 because the motivation has not been established under Section 208 of the Corporation. So you don't think we could show motivation in this case in terms of what happened to her nephew and reason for her being targeted at all? Your Honor, it is the Petitioner's contention that the decision on the CAT was so egregious that it is the clearest avenue to establish her claim for relief. Now, it's a strategic decision taken. I'm just wondering why, because it seems to me you're giving up those two. That's an interesting strategy, but go ahead. Because basically what I think counsel is saying is it's a harmless error. And that is, yes, they may have gotten it wrong as to acquiesce and what is willful blindness, but if there's no torture, you don't even, that's of no moment. That's what they're saying. And your learning counsel, colleague, says that there's no case that can be done without physical, and even with the CFR talking about emotional distress, it's more of a prolonged period than two isolated incidents. That's what you're facing. Can you respond to that? Your Honor, if I quickly may, I only have 30 seconds left. I took up so many times, so I'll give you more time. Go ahead. Your Honor, the government does contend that the facts regarding what we claim to be as torture for Ms. Cabrera are clearly laid out in the findings of fact. However, if we look at page 53, there is one paragraph that states, according to the respondent, she went to the police, but they laughed on her face. And there is no discussion in these findings of fact as to the breakdown of the threats. Additionally, counsel contends that it is unclear in page 100 and 104 whether there are two separate instances. However, page 104 clearly says, was there any other occasions after March 2014 that you were threatened? And then she discusses a second one. So I just wanted to clarify that because I do believe it goes to your question of is it harmless error because there's no there there. There is a there there. And the underlying problem is that these facts, while the government continues to state that they are part of the decision, they're not. They're part of the record in her testimony. Page 150 of the record also has a written declaration where she states what occurred, that she was threatened with murder. And the immigration judge just doesn't address it. The immigration judge doesn't grapple with the question of does do these threats constitute. For you to prevail since it's undisputed that she was threatened with death because there's no credit, no credibility that's undisputed in this record to win, we'd have to say that. The threat of death constitutes torture. Your Honor, the court could go that far. But but what tell me, how will we how will we have an opinion that's less than that? To minimize the court's intrusion on the process, it will be to remand to have the fact finder answer these questions. That would be inappropriate to have the fact finder do the analysis that didn't do before. That is correct. You can't just say it's unfortunate. That is correct. We're not asking the court to establish a per se rule that threats of death are always torture. We're not asking the court to do that. I don't believe the issue is even ripe enough. So you should, in the first instance, make some analysis. Taking these facts and taking our precedent and saying that this can or is a factual question of why it doesn't meet that standard. That is correct, Your Honor. I think that would be the more appropriate course because to answer the larger question with a set of facts that have not been developed by the immigration judge, have not been discussed by the immigration judge, I think would be premature. But the way this case is framed, that's ultimately going to be a legal question. We'll get to that question. But anyway, I see your point. At this point, go back, take a look at it, fill in the blanks in terms of analysis, and then be able to, for example, if you prevail, then it's over for you. If not, then the court will look at whether or not that kind of thing. That is correct, Your Honor. Your Honors, thank you so much. Thank you. Let me step up. All right. We'll come down to recounsel and proceed to our last case.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker